UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

    v.                                     Case No. 25-cr-0020-bhl-1

LAMONT STALLINGS,

        Defendant.

## ORDER ADOPTING MAGISTRATE JUDGE'S RECOMMENDATION AND DENYING DEFENDANT'S MOTION TO SUPPRESS

On February 4, 2025, a grand jury returned a five-count indictment charging Lamont Stallings with (1) three counts of committing Hobbs Act robberies in violation of 18 U.S.C. § 1951(a); (2) one count of carrying and brandishing a firearm during a crime of violence in violation of 18 U.S.C. § 942(c); and (3) one count of being a felon in possession in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). (ECF No. 1.) On April 7, 2025, Stallings moved to suppress evidence seized during his warrantless arrest and the warrantless search of his car trunk, insisting the police officers lacked probable cause. (ECF No. 32 at 1–2.) On April 30, 2025, Magistrate Judge William E. Duffin recommended that Stallings's motion to suppress be denied and rejected Stallings's request for an evidentiary hearing. (ECF Nos. 40 & 41.) Stallings timely objected to the magistrate judge's rulings, (ECF No. 43), and briefing on the objections is now complete. For the reasons given below, the Court adopts the recommendation of Magistrate Judge Duffin and denies Stallings's motion to suppress.[1]

---

[1] Stallings has also filed a *pro se* request for discovery, (ECF No. 54), and a *pro se* motion for bond, (ECF No. 60). The Court does not consider *pro se* motions from a defendant represented by counsel. *See United States v. Patterson*, 576 F.3d 431, 436–37 (7th Cir. 2009) (explaining that a district judge need not consider *pro se* filings by a defendant represented by counsel and that "such [hybrid representation] arrangements are disfavored"). The Court will therefore deny Stallings's *pro se* motions.

## FACTUAL BACKGROUND[2]

On December 30, 2024, at approximately 10:11 a.m., an employee working at a T-Mobile store located at 10400 West Silver Spring Drive in Milwaukee called the Milwaukee Police Department to report an armed robbery and theft of cell phones. (ECF No. 32 at 3 ¶1; ECF No. 33 at 1–2.) One of the stolen cell phones had a tracking device installed. (ECF No. 32 at 4 ¶2.) The company responsible for monitoring the GPS tracking device (Ensurity) contacted the Milwaukee Police Department dispatch line at 10:16 a.m. and began providing real-time location updates from the tracking device to law enforcement. (ECF No. 33 at 2.)

The tracker indicated the device was moving at approximately 29 mph, and then was idle at 9089 North 75th Street. (ECF No. 32 at 4 ¶3; ECF No. 33 at 2.) The device's movements slowed consistent with a walking pace and suggested the device had been taken inside an apartment complex at 9001 North 75th Street. (ECF No. 33 at 3.) Milwaukee Police Officers Alfred Herrmann and Eric Kradecki arrived at 9089 North 75th Street to conduct a vehicle canvas in the area in search of the armed robbery suspect. (ECF No. 32 at 4 ¶5.) During their canvas, the officers observed an unoccupied maroon four-door Pontiac Grand Prix with no license plates, parked near 9089 North 75th Street. (*Id.* ¶6; ECF No. 33 at 3.)

The officers parked a half a block away and continued to monitor the vehicle. (ECF No. 32 at 4 ¶7.) They observed a black male wearing green or light blue pants and a gray hooded sweatshirt carrying a black duffle bag over his shoulder. (*Id.* ¶8.) After walking toward the Pontiac and placing the duffle bag in the trunk, the man entered the car and started driving northbound on 75th Street and then turned westbound on West Northridge Lakes Boulevard. (*Id.* ¶¶8–9.) Five to ten minutes later, the officers received a corroborating dispatch indicating that the tracking device was moving again. (*Id.* ¶10.) The officers continued receiving updates on the tracking device's location. (ECF No. 33 at 3–6.) At 11:12 a.m., an officer reported observing the Pontiac without plates traveling eastbound on Burleigh Street, consistent with the tracking information. (*Id.* at 6).

The officers followed the Pontiac to North 27th Street and West Burleigh Street and watched the vehicle park at the address of 3102 North 27th Street, directly across the street from

---

[2] Stallings outlines the undisputed facts in his initial brief and further states that "[t]here are no disputed facts." (ECF No. 32 at 3–6.) The Court determines that given the undisputed material facts, an evidentiary hearing is not necessary to make a probable cause determination and denies Stallings's renewed request for an evidentiary hearing, (*see* ECF No. 43 at 1).

a Boost Mobile cell phone store. (*Id.* at 5 ¶11; ECF. No. 33 at 6.) The tracking device showed that it turned northbound on 27th Street by Boost Mobile and then stopped at 3102 North 27th Street in front of Boost Mobile. (ECF No. 33 at 6.) As the individual was about to exit the car, the officers activated their squad car's emergency lights and siren and exited the squad car with their weapons drawn. (ECF No. 32 at 5 ¶¶14–15.) They ordered the driver, who was later identified as Stallings, to put his hands up and walk backwards toward them. (*Id.* ¶16.) The officers handcuffed Stallings and used his keys to open the closed trunk of his car and seized the closed black duffle bag. (*Id.* ¶¶16–17.)

The officers did not have an arrest warrant for Stallings or a search warrant for his car. (*Id.* ¶¶12–13.) One of the officers nevertheless unzipped the duffle bag, revealing cell phones. (*Id.* ¶18.) A further search of the vehicle led to the recovery of additional evidentiary items, including a black North Face jacket (consistent with the robber's jacket during the robbery), a black ski mask, a loaded handgun recovered from under the front passenger seat, and a box of 9mm firearm ammunition recovered from the trunk. (ECF No. 37 at 8–9.) Stallings claims police lacked probable cause for both the arrest and the search of the vehicle's trunk. (ECF No. 32 at 2.)

ANALYSIS

Stallings's motion to suppress turns on the issue of probable cause. He contends the officers lacked probable cause to arrest him and search his vehicle, rendering the materials found inadmissible in the case against him. The magistrate judge concluded that, considering the totality of circumstances, the officers had probable cause both to arrest Stallings and to search his car without a warrant. Based on a review of the record, the Court agrees.

## I. The Police Officers Had Probable Cause to Arrest Stallings.

"[P]robable cause is a common-sense inquiry requiring only a probability of criminal activity; it exists whenever an officer or a court has enough information to warrant a prudent person to believe criminal conduct has occurred." *Young v. City of Chicago*, 987 F.3d 641, 644 (7th Cir. 2021) (alteration in original) (citation omitted). "This 'is not a high bar.'" *Id.* (citation omitted). Evaluating probable cause requires looking at "the totality of the circumstances – 'the whole picture' – not each fact in isolation." *United States v Rees*, 957 F.3d 761, 766 (7th Cir. 2020) (citation omitted). "If the underlying facts supporting the probable cause determination are not in dispute, the court can decide whether probable cause exists." *Maxwell v. City of Indianapolis*, 998 F.2d 431, 434 (7th Cir. 1993) (citations omitted).

Judge Duffin correctly concluded that there was probable cause to arrest Stallings. (*See* ECF No. 40 at 5–8.) The tracking device data showed that the stolen cell phone's movements aligned with the Pontiac's movements and, as Judge Duffin determined, this alone was "sufficient to give the officers probable cause to believe that Stallings [the driver] was involved in the T-Mobile armed robbery." (*Id.* at 6.) The MPD I/CAD report that Stallings filed with his motion to suppress reflects that the officers were informed at 10:27:16 that the suspect was a black male, approximately 25 years-old, wearing a black zip jacket, black ski mask, black boots, and gray pants. (ECF No. 33 at 2.) As Judge Duffin further noted, the CAD report, coupled with the officers' observations, provided "an even clearer picture of Stallings's movements from the time the stolen phone left the store until his arrest." (ECF No. 40 at 6–7.) The officers received continuous updates on the tracking device's location which were consistent with Stallings's movements as observed by the officers—entering the Pontiac, traveling through Milwaukee and then stopping in front of Boost Mobile, a cell phone store.

As Judge Duffin explained, the updates and observations were sufficient to provide the officers with probable cause to believe Stallings was involved in the T-Mobile armed robbery. (*Id.* at 8.) Probable cause only requires "a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983). There was a substantial chance that the tracking device—with data points repeatedly corresponding with Stallings's movements and locations—was in Stallings's possession and Stallings—likely possessing the stolen phone with the tracking device—was involved in the T-Mobile armed robbery.

Stallings argues that the tracking information, standing alone, does not constitute probable cause to believe that Stallings was involved in the robbery and objects to Judge Duffin conclusion that "even without a description of the robber," the tracking information was sufficient. (ECF No. 43 at 5 (quoted text fixed) (quoting ECF No. 40 at 6).) Stallings contends that the police officers did not know the accuracy of the tracking device as the officers did not have real-time access to the tracking information. (*Id.* at 5.) Stallings understates the information the officers had. Indeed, as Stallings acknowledges, the officers observed the Pontiac pull away from the curb and, just five to ten minutes later, they received a dispatch that the tracked cell phone was moving again. (ECF No. 43 at 5.) The tracking data includes the longitude, latitude, altitude, and speed of the device. (ECF No. 35-1.) It also provides an accuracy calculation, in number of feet, for each data point,

typically reflecting an accuracy of within 15 feet. (*Id.*) According to the government, the tracking device provided location data points five to six times per second from the time the device left the store until it was inventoried into evidence after Stallings's arrest. (ECF No. 38 at 4.) Stallings presents no evidence to call into question the accuracy of the GPS data that the officers relied upon. Based upon the totality of circumstances including the officers' observations outside of the apartment, the movement of Pontiac, and Stallings decision to park the Pontiac in front of another cell phone store, the officers had probable cause to arrest Stallings and search the trunk of his car.

Judge Duffin also noted that the officers' probable cause finding was bolstered by the fact that Stallings's car did not have license plates, suggesting an intent to evade law enforcement. (ECF No. 40 at 9.) Stallings objects to Judge Duffin's reliance on the lack of license plates but acknowledges that an automobile with missing registration plates will attract the attention of law enforcement. (ECF No. 43 at 6.) Stalling's operation of a vehicle without registration plates supplied officers with another reason to stop the Pontiac. As noted by the government, operating a car without registration plates is a violation of Wis. Stat. § 341.15. (ECF No. 57 at 8.) Judge Duffin correctly concluded that it was entirely reasonable to believe that evidence of the cell phone robbery and Stallings's operation of the vehicle without license plates would be found in the Pontiac.

## II.     The Police Officers Had Probable Cause to Search Stallings's Car.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend IV. Under the protections of the Fourth Amendment, searching a car without a warrant is presumptively unreasonable, unless that search comes within a few well-established exceptions to the warrant requirement. *See Arizona v. Gant*, 556 U.S. 332, 338 (2009*); United States v. Harris*, 791 F.3d 772, 777 (7th Cir. 2015). In this case, two exceptions are applicable: searches predicated on the "search incident to arrest" theory and those predicated on the "automobile exception." *See United States v. Edwards*, 769 F.3d 509, 513–14 (7th Cir. 2014). The first authorizes a warrantless search of a vehicle incident to the arrest of one of its occupants. The "[p]olice may search a vehicle incident to a recent occupant's arrest . . . [if] it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Gant*, 556 U.S. at 351. Under the automobile exception, "where there is probable cause to believe that a vehicle contains contraband or evidence of a crime, law enforcement may conduct a warrantless search of the vehicle." *United States v. Zahursky*, 580

F.3d 515, 521 (7th Cir. 2009) (citations omitted). These exceptions "are interrelated, but not identical." *Edwards*, 769 F.3d at 514. "The suspicion required for a vehicle search incident to arrest . . . is keyed to the offense of arrest; the automobile exception is not tied to an arrest." *Id.* Just as the officers had probable cause to believe Stallings was involved in the T-Mobile robbery, they had probable cause to believe that evidence of the crime was in his car. The search of Stallings's car was thus lawful, falling within both the search incident to arrest and automobile exception to the warrant requirements.

## CONCLUSION

After a *de novo* review of the recommendations made by Magistrate Judge Duffin under 28 U.S.C. § 636(b)(1), the Court overrules the Defendant's Objections, (ECF No. 43), and accepts, in its entirety, the Recommendation and Order of Magistrate Judge Duffin, (ECF No. 40).

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Suppress, ECF No. 31, is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's *pro se* Request for Discovery, ECF No. 54, and *pro se* Motion for Bond, ECF No. 60, are **DENIED**.

Dated at Milwaukee, Wisconsin on July 8, 2025.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge